EVANS *v.* INDIANA UNIVERSITY MEDICAL CENTER.

[No. 18,191. Filed September 28, 1951. Rehearing denied November 2, 1951. Transfer denied December 5, 1951.]

680

*Smiley N. Chambers,* of Indianapolis, for appellant.

*Burke G. Slaymaker, William B. Weisell;* and *Slay-maker, Locke & Reynolds,* all of Indianapolis, for appellee.

CRUMPACKER, J.—On the 12th day of February, 1948, the appellant, then employed by the appellee, suffered personal injuries by reason of an accident arising out of and in the course of his employment which resulted in the amputation of his left arm below the elbow. The appellee furnished and paid for all medical and surgical attention and hospital expenses necessitated by said injuries and also compensated the appellant, as contemplated by statute, in the sum of $20.08 per week for 200 weeks for the permanent partial impairment of the man as a whole due to the loss of his arm. The appellant returned to work in November, 1948, and continued in the employ of the appellee until November, 1949, when he became totally disabled through illness diagnosed as tuberculosis of the lungs. A dispute arose between the parties as to the appellee's liability for the appellant's tubercular condition and the appellant thereupon filed application for additional compensation by reason thereof. At the same time he also filed an application for the review of the original award on account of a change in his condition due to the subsequent development of pulmonary tuberculosis. The Industrial Board heard these two applications together and denied relief on both.

Though there is nothing in either of the applications filed by the appellant to indicate that he seeks relief

under the Occupational Diseases Act the evidence and his brief disclose a contention on his part that under all the circumstances of the case his tubercular condition should be considered an occupational disease. Obviously the board also considered that question to be in the case as it specifically found "that in the performance of his duties with the defendant the plaintiff was not exposed to nor did he contract an occupational disease." Not until it filed its answer brief in this court has the appellee sought to confine the consideration of the case to the corners of the pleaded issues and therefore we approach the questions involved with the same liberality in respect to such issues as did the Industrial Board.

It is conceded by both parties that prior to the appellant's accidental injury of February 12, 1948, he was afflicted with a limited pulmonary calcification and fibrosis due to a previous tubercular infection which, on that date, was arrested and latent. As the burden of proving his case was on the appellant and the finding and award of the Industrial Board is against him we cannot reverse unless the evidence is undisputed and of such character as to compel us to conclude that either (1) the appellant's present pulmonary tuberculosis is a proximate result of the injury of February 12, 1948, in that said injury re-activated such disease which theretofore had been latent, or (2) the appellant's pulmonary tuberculosis arose out of his employment and as an incident thereto; that there was a direct causal connection between the conditions under which the appellant worked and his present illness and that such illness followed from such employment as a rational consequence thereof, and hence became compensable as an occupational disease. See Burns' 1940 Replacement, § 40-2206.

The appellant insists that he is entitled to relief under the first proposition because Dr. J. M. Garland, a medical expert, testified that, in his opinion, the injury to the appellant's left arm on February 12, 1948, and its subsequent amputation, so lowered the appellant's resistance to disease that his dormant tuberculosis was re-activated to the extent that by November, 1948, he became totally and permanently disabled. There is no medical expert opinion to the contrary and as his prior arrested tubercular condition, the injury to and amputation of his left arm and his present active tuberculosis in both lungs, are conceded facts, the appellant contends that the board's finding that "his present illness was not caused or aggravated by his accidental injury received on the 12th day of February, 1948," is obviously arbitrary and unjustified and evidences a capricious disregard of the undisputed testimony of a credible witness.

On this phase of the case the causal connection between the appellant's accidental injury on February 12, 1948, and his present condition is the very essence of his right to relief. The only evidence of such fact is the opinion of Dr. Garland, a general practitioner, who made no specialty of tuberculosis in any form and made no pathological explanation in support of his opinion. On the other hand the evidence discloses that six weeks after said injury x-ray photographs of the appellant's chest and lungs showed no evidence of active tuberculosis. Under such circumstances we cannot say, as a matter of law, that the board acted capriciously and arbitrarily in rejecting the opinion of Dr. Garland nor can we say that such evidence forces us to a conclusion contrary to that reached by the board. *Scoopmire* v. *Taflinger* (1944),

114 Ind. App. 419, 52 N. E. 2d 728; *Nat. City Bank* v. *Kirk* (1926), 85 Ind. App. 120, 134 N. E. 772.

This brings us to a consideration of the appellant's contention that, without regard to the accident of February 12, 1948, he is suffering, nevertheless, from an occupational disease to which he was exposed while in the appellee's employ from November, 1948, to November, 1949. It is common knowledge that pulmonary tuberculosis is a disease to which the general public is exposed and it is not peculiarly an occupational disease in the sense that the courts have come to regard silicosis or painter's lead poisoning, as examples. It may become an occupational disease, however, if it appears to have had its origin in a risk connected with the employment and to have flowed from that source as a consequence. It seems obvious that if one is employed in a sanatorium for the treatment of tuberculosis, contraction of the disease is a hazard to which the workman would not have been equally exposed outside the employment and therefore the disease is incidental to the business and not independent of the relation of the employer and employee. Under such circumstances pulmonary tuberculosis meets the statutory definition of an occupational disease. Burns' 1940 Replacement, § 40-2206. *Star Publishing Co.* v. *Jackson* (1944), 115 Ind. App. 221, 58 N. E. 2d 202.

The evidence concerning this question may be stated briefly thus: After the amputation of his lower left arm in February, 1948, the appellant returned to work the following November. His duties were those of a plumber and general maintenance man in and about the appellee's premises. As far as the evidence discloses he was then afflicted with inactive tuberculosis in both lungs. During the next 12 months he was called upon 15 or 18 times to "unstop sewer lines and

repair basins, sterilizers and toilets" in the isolation ward on the 5th floor of the Robert W. Long Hospital. Patients suffering with various types of contagious diseases as well as some tubercular patients were confined there. There is no evidence indicating how long the appellant worked in said isolation ward during each or any of the 15 to 18 times his duties called him there and he related but one instance where he did any work in a room occupied by a tubercular patient. While engaged in work in said isolation ward he was furnished with no mask for his nose or mouth although nurses and interns habitually used them. In November, 1949, the appellant developed a cold and suffered considerable pain in his chest and thereupon he went to the appellee's clinic where x-ray photographs of his lungs were taken. He was informed that his tubercular condition had probably become active and was advised to go to Sunnyside Sanatorium for positive diagnosis. This he did in October, 1950, when active tuberculosis was found in both lungs. With these facts in mind Dr. Garland testified that in his opinion there was a causal connection between the work the appellant did between November, 1948, and November, 1949, and his present tubercular condition and that said tuberculosis followed as "a general result of that kind of work that he did." On cross-examination the doctor stated that it is possible that the appellant's latent tuberculosis was activated by a cold he knew him to have in November, 1948; that regardless of one's occupation an old and dormant tuberculosis might "flare up" or re-activate itself; that tuberculosis is not peculiar to any type of work; that people contract it regardless of employment or no employment.

These facts constrain us to say that if the appellant's present re-activated illness is the proximate result of his employment from November, 1948, to November,

1949, he has an occupational disease and is entitled to compensation. It must be conceded that had the Industrial Board so found there is ample evidence in the record to sustain such finding. We are asked however to go further and say, as a matter of law, that the evidence compels such finding. It is apparent that the Industrial Board felt that the evidence concerning the appellant's exposure to tuberculosis after returning to work in November, 1948, was too vague and indefinite to warrant a finding that his old tubercular condition was re-activated thereby rather than by a cold or some condition inherent in the individual and independent of his employment. We cannot say, as a matter of law, that the board's conclusions in that respect find no justification in the record.

Award affirmed.

NOTE.—Reported in 100 N. E. 2d 828.