Melvin H. DENNISON,
Plaintiff-Appellant,

v.

MARTIN, INC., Defendant-Appellee.

No. 2–479A100.

Court of Appeals of Indiana,
First District.

Oct. 23, 1979.

Rehearing Denied Nov. 26, 1979.

Edgar A. Grimm, Grimm & Grimm, Auburn, for plaintiff-appellant.

Theodore L. Locke, Jr., Locke, Reynolds, Boyd & Weisell, Indianapolis, for defendant-appellee.

LOWDERMILK, Presiding Judge.

### STATEMENT OF THE CASE

Plaintiff-appellant Melvin H. Dennison (Dennison) seeks judicial review of an award entered by the Full Industrial Board of Indiana. The Board awarded Dennison benefits for a 60% permanent partial impairment but denied recovery for total permanent disability. Dennison argues that the award is contrary to law because it was

entered in lieu of an award for total permanent disability when the evidence proved that he was permanently totally disabled.

## FACTS

Dennison was employed by Martin, Inc. as a welder. On October 15, 1974, a steel beam which was being moved by a crane struck Dennison in the head. Dennison sustained injuries to his head, neck and back.

## ISSUE

Is the award of the Board denying Dennison benefits for total permanent disability contrary to law?

## DISCUSSION AND DECISION

Dennison received a negative award on his claim for total permanent disability benefits.

█ A claimant bears the burden of proof for his claim. *Evans v. Indiana University Medical Center*, (1951) 121 Ind.App. 679, 100 N.E.2d 828. A negative award may be sustained by an absence of evidence favorable to the claimant's contentions or by the presence of evidence adverse to the claimant's contentions. *Martin v. Monsanto Co.*, (1975) 166 Ind.App. 5, 333 N.E.2d 828.

In *Hilltop Concrete Corp. v. Roach*, (1977) Ind.App., 366 N.E.2d 218, 224, Judge Buchanan (now Chief Judge) wrote:

"It is the Board which has the duty to find the nature and extent of a claimant's injury and to grant the appropriate compensation under the Act. . . . In doing so the Board must weigh all the relevant evidence, including any expert testimony and claimant's own statement regarding the extent and character of his injury. . . ." (Citations omitted)

In *Hendrickson v. Contracting & Material Co.*, (1966) 138 Ind.App. 193, 195, 212 N.E.2d 903, 904, the claimant presented evidence at the hearing before the Board, but his employer presented no evidence. Judge Carson, in reviewing the negative award, emphasized that

"[t]he Industrial Board as the trier of the facts had the right to believe that evidence which it finds creditable and by the same token the right to disbelieve such evidence as it does not find worthy. . . ."

Finally, the opinion in *Davis v. Webster*, (1964) 136 Ind.App. 286, 292, 198 N.E.2d 883, 886, includes this well established rule:

"Before there can be a reversal of a negative award on the evidence, it is necessary that all the evidence appear one way and be so conclusive in nature and character as to force a conclusion in the minds of reasonable men, contrary to that reached by the Industrial Board. . . ." (Citations omitted)

The parties stipulated into evidence a letter from Dr. Cattell dated February 10, 1978, and a letter from Dr. Gumbert dated June 21, 1978. Dr. Cattell's remarks in his letter were based upon his examination of Dennison on February 3, 1978, Dennison's statements made to Cattell, and hospital and other medical records furnished Dr. Cattell by Dennison's attorney. Dr. Gumbert had treated Dennison. Dr. Gumbert based the comments contained in his letter upon his own records and "information" provided by Dennison's attorney. The only other evidence presented was testimony by Dennison and by Dennison's wife.

Both Mr. and Mrs. Dennison stated at the hearing held September 20, 1978, that Dennison had lost considerable weight as a consequence of the injury he suffered on October 15, 1974. He explained that his weight had ranged from 180 to 195 pounds before he was injured and that his weight at the time of the hearing was 154 pounds. Dr. Cattell recorded Dennison's weight as 180 pounds on February 3, 1978. Dr. Gumbert noted that on May 15, 1978, Dennison was having no problems eating and Dennison's weight had been stable at least since April 18, 1978.

Dennison's wife testified that her husband could not drive an automobile, he suffered constant pain in his head, he frequently lost his temper, he had difficulty sleeping, and he suffered from depression. Dennison described the stomach problems

he had experienced as a result of medication; he also explained that his feet had become numb due to certain medication which had been prescribed for him. Although Mrs. Dennison stated that they had been informed by doctors at Mayo Clinic that the numbness would be a permanent problem, no report from Mayo Clinic was introduced into evidence. Dennison testified that he suffered from intense headaches and constant pain. Dennison expressed the opinion that his condition had worsened since May 1978 and that he was 100% impaired as a result of his injury. Dennison expressed certainty that he was unable to maintain employment because he suffered constant pain and could not tolerate being around people.

Dr. Cattell reported in his letter dated February 10, 1978, that Dennison's condition had become stable and noted that "as of today, he [Dennison] feels very poor as far as his neck and his headaches are concerned." Dr. Cattell assessed the permanent partial impairment at 35–45% and expressed the opinion that Dennison is totally disabled because he "has difficulty walking and sitting." Yet Dr. Cattell expressed no opinion whether objective medical examination confirmed that the medical problems claimed by Dennison were as severe as Dennison contended.[1]

In Dr. Gumbert's letter dated June 21, 1978, Dr. Gumbert stated that "he [Dennison] told me on May the 15th that he was having no problems with eating, no pain, and no gastro intestinal abnormalities." Dr. Gumbert expressed no opinion concerning total permanent disability. He concluded that, at most, Dennison had a 5–10% impairment of the whole man.

■ We assure Mr. Dennison that we have very carefully considered the evidence. The fact that this court might not have reached the same conclusion if it had been given the assignment of making the determination initially is not decisive on review.

Dennison appeals from a negative award on the claim for total permanent disability benefits. The evidence is not so conclusive in nature and character as to force a conclusion in the minds of reasonable men that Dennison is permanently totally disabled. Neither do we find that the evidence favorable to Dennison is so persuasive as to suggest that the Board ignored evidence arbitrarily or capriciously. Any attempt on the part of this court to interfere with the decision reached by the Board in this case would constitute a usurpation of the Board's authority to assess credibility of witnesses and to weigh the evidence. We hold that the negative award is not contrary to law.

We will briefly address certain other assertions included in Dennison's brief on appeal.

Dennison argues that there was no evidence from which the Board could have determined that total disability had ended as of May 8, 1978, the last date on which Dennison received temporary total disability payments.

■ Temporary total disability payments are provided to compensate the injured employee during the period of treatment immediately after the injury is suffered. When the injury reaches a permanent and quiescent state, an assessment is made of the extent of permanent injury. The permanent loss results in benefits for total permanent disability and permanent partial impairment, as proven by the evidence. *Covarubias v. Decatur Casting,* (1976) Ind. App., 358 N.E.2d 174.

■ The evidence, as set forth previously in this opinion, supports the Board's findings that Dennison's injury had reached a permanent and quiescent state at least by May 15, 1978, and that Dennison was left with a 60% permanent partial impairment. Although *temporary* total disability payments were made through May 8, 1978, the

---

1. For example, Dr. Cattell found reduced sensation to touch and pin prick over the soles and toes of both of Dennison's feet. He did not state, however, whether the reduced sensation would reasonably be expected to result in Dennison's alleged inability to continue walking or remain sitting for more than a few minutes at a time.

evidence does not lead solely to the conclusion that Dennison was *permanently* totally disabled.

 Dennison asserts that the Board failed to make a finding on the issue of bad faith. The Board entered its finding number six on this issue and found no evidence of bad faith. Although the payments for temporary total disability may have been discontinued without strict compliance with proper procedure and payments for certain medical expenses were delayed, these failings did not *ipso facto* dictate a finding of bad faith. We detect no basis for holding that the Board erred in refusing to order payment of attorney fees without credit.

The award of the Full Industrial Board is affirmed.

ROBERTSON and NEAL, JJ., concur.