**EAST ASIATIC/PLUMROSE,**
**Appellant–Defendant,**

v.

**David RITCHIE, Appellee–Plaintiff.**

No. 93A02–9503–EX–167.

Court of Appeals of Indiana.

Aug. 30, 1995.

Rehearing Denied Oct. 11, 1995.

Robert D. Woods, Kalamaros & Associates, South Bend, for appellant.

Patrick F. O'Leary Yoder Ainlay Ulmer & Buckingham, Goshen, for appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant–Appellant East Asiatic/Plumrose ("Plumrose") appeals an award of benefits under the Workmen's Compensation Act ("the Act") to Plaintiff–Appellee David Ritchie ("Ritchie").

We affirm in part, reverse in part, and remand.

### ISSUES

Ritchie raises two issues for our review, which we restate as:

1. Whether the Worker's Compensation Board ("the Board") had jurisdiction to make an award.

2. Whether the Board's award of total disability benefits was supported by specific findings of fact.

## FACTS AND PROCEDURAL HISTORY

On July 6, 1988, Ritchie suffered an injury in an accident arising out of and in the course of his employment with Plumrose. The injury resulted when a pipe penetrated the roof of his mouth and the frontal lobe of his brain.

On July 25, 1988, Ritchie and Plumrose signed an "Agreement to Compensation" providing that Plumrose would pay temporary disability benefits ("TTD") to Ritchie.[1] These payments were to begin on July 14, 1988, and were to continue until "terminated in accordance with the Workmen's Compensation Law of the State of Indiana." The Worker's Compensation Board ("the Board") approved this agreement on September 20, 1988. TTD benefits were paid by Plumrose to Ritchie until April 16, 1990.

Ritchie's physician released him to return to work on April 16, 1990. Ritchie did return to work, but was admitted to a hospital on April 24, 1990, for treatment of depression and an impulse control disorder. After his discharge from the hospital on May 14, 1990, Ritchie did not return to work.

On July 17, 1990, Ritchie's treating physician concluded that Ritchie had reached a quiescent state. The physician stated that Ritchie had sustained permanent partial impairment of twenty percent of the whole man.

On October 11, 1990, Ritchie and Plumrose filed an "Agreement to Compensation Of Employee and Employer" that set forth a settlement of permanent partial impairment benefits ("PPI").[2] The Board approved this agreement on October 25, 1990. Pursuant to the agreement, Plumrose paid Ritchie one hundred weeks of PPI benefits. The beginning date of the payments was July 6, 1988 and the ending date was June 21, 1990.

On May 4, 1992, Ritchie filed a Form 14 application for review of the award on the basis of changed conditions. The application alleged that since the date of the settlement Ritchie's disability and permanent partial impairment had increased and additional medical expenses had been incurred.

Plumrose filed an answer alleging that the Board lacked jurisdiction over the subject of the application. This issue was tried before a single hearing member of the Board. The single hearing member found that the Board did have jurisdiction to decide the merits of the application for change. The single hearing member later found that Ritchie was permanently and totally disabled and that he should receive total disability payments. On March 6, 1995, the Board adopted the ruling of the single hearing member. Plumrose now appeals the Board's ruling.

## DISCUSSION AND DECISION

### I. STATUTE OF LIMITATIONS

Plumrose contends that the Board erred in not dismissing Ritchie's Form 14 application. Plumrose cites to IND.CODE 22–3–3–27, which states:

(a) The power and jurisdiction of the [Board] over each case shall be continuing and from time to time it may, upon its own motion or upon the application of either party, on account of a change in conditions, make such modification or change in the award ending, lessening, continuing, or extending the payments previously awarded, either by agreement or upon hearing, as it may deem just, subject to the maximum and minimum provided for in I.C. 22–3–2 through I.C. 22–3–6.

(b) Upon making any such change, the [Board] shall immediately send to each of the parties a copy of the modified award. No such modification shall affect the previous award as to any money paid thereunder.

(c) The [Board] shall not make any such modification upon its own motion nor shall any application therefore be filed by either party after the expiration of two (2) years

---

1. The term "disability," as used in the Act, refers to the injured employee's inability to work. *Talas v. Correct Piping Co.* (1982), Ind., 435 N.E.2d 22, 26.

2. The term "impairment," as used in the Act, refers to the injured employee's loss of physical function or functions. *Talas,* 435 N.E.2d at 26.

from the last day for which compensation was paid under the original award made either by agreement or upon hearing, except that applications for increased permanent partial impairment are barred unless filed within one (1) year from the last day for which compensation was paid.

Plumrose argues that the TTD award, which was paid through April 16, 1990, is the "original" award mentioned in subsection (c) of the statute. Plumrose contends that the PPI award, which was paid through June 21, 1990, was not part of the "original" award.

The difference between temporary disability, permanent disability, and permanent partial impairment was discussed by this court in *White v. Woolery Stone Co.* (1979), 181 Ind.App. 532, 396 N.E.2d 137, wherein we stated:

Temporary total disability [TTD] payments are intended to compensate an employee for the treatment period following a work-related injury, and during this treatment period it is relevant whether the injured workman has the ability to return to work of the same kind or character. If he does not have the ability to return to work of the same kind or character during the treatment period, he is temporarily totally disabled. This is to be compared with permanent total disability and permanent partial impairment which are determined, alternatively, when the work-related injury reaches a permanent and quiescent state, the treatment period ends, and the permanent injury can be assessed for compensation purposes.

396 N.E.2d at 139 (citations omitted). Once an injury reaches a permanent and quiescent state, an assessment may be made as to the extent of the permanent injury and the injured employee can be compensated. *Duncan v. George Moser Leather Co.* (1980), Ind. App., 408 N.E.2d 1332, 1337. If neither the employee or the employer appeals the award of permanent compensation, "it becomes a full and final determination of the condition of the injured worker at that time and of the employer's liability to pay, subject only to a petition for modification." *Id.* The award is not an adjudication as to the claimant's future condition, and the employee "may seek

modification of the original award under Ind. Code 22–3–3–27...." *Id.*

In *Bagwell v. Chrysler Corp.* (1976), 168 Ind.App. 110, 341 N.E.2d 799, *reh'g denied,* similar to the present case, this court was asked to determine whether the employee's Form 14 should be dismissed. In that case, Bagwell received TTD benefits intermittently from September 28, 1965, until June 22, 1967. On December 18, 1967, he was awarded PPI benefits through May 16, 1968 on a determination that he had a 27½% impairment. On March 21, 1968, he filed an application for review, and the Board subsequently awarded fifty additional weeks of PPI benefits on a 37½% impairment. On August 8, 1970, Bagwell filed a Form 14 application for review alleging the recurrence and increase of his disability. The Board dismissed the application because it was not filed within one year of the last date for which compensation was paid. Bagwell appealed the dismissal, arguing that the one year limitation set forth in I.C. 22–3–3–27(c) did not apply for increased PPI, but rather for changes in the nature of the award. He maintained that the two year period applied and that he had properly filed his application within that period. Chrysler answered that Bagwell's application was not timely even if the two year period was applicable.

This court noted that the disputed application was filed two years and three months after the last PPI payment was made under the December, 1967, PPI award. We rejected Bagwell's argument that the fifty additional weeks awarded pursuant to his March, 1968, application should be tacked to the original period for purposes of a determination of jurisdiction under I.C. 22–3–3–27(c). We held that Bagwell's argument "flies in the face of the unambiguous words of [I.C. 22–3–3–27(c) ] that the *original* award is determinative of the 2–year period." *Id.,* 341 N.E.2d at 802. (Emphasis in original). Thus, we held that "for purposes of the 2–year limitation, additional weeks of compensation pursuant to later modification may not be added to the period of the original award in determining the last date for which compensation was paid." *Id.*

■ It is apparent from *Bagwell* that this court interprets "original award," as the term is used in I.C. 22–3–3–27(c), to include the initial TTD and PPI awards. This interpretation takes into consideration the purposes of the initial awards. Typically a TTD award entered at the initial stages of the case contains no fixed compensation period because the extent of the injury is unknown. It is a continuous award providing benefits until the worker returns to work or reaches a permanent and quiescent state. It is the PPI award that usually adjudicates the injured employee's right to compensation up to that point in time. As discussed above, when the parties stipulate to a PPI award, the award becomes a full and final adjudication of the injured employee's condition and of the employer's liability to pay compensation to him, subject only to the right of either party to seek modification. In essence, the TTD and PPI benefits are the two halves of the whole award.

Our interpretation is consistent with the wording of I.C. 22–3–3–27(c) as a whole. Immediately after providing that no application should be filed "after the expiration of two (2) years from the last day for which compensation was paid under the original award," the statute provides that no application for *increased* PPI should be filed "within one (1) year from the last day for which compensation was made." This suggests that the "original award" includes the award of PPI; a claimant could not seek to increase PPI unless an award of PPI had previously been made.

In the present case, the last payment under the original award was made June 21, 1990. The Form 14 application was filed May 4, 1992. The application was filed within the two year limitation period of I.C. 22–3–3–27(c). Accordingly, the Board was correct in rejecting Plumrose's motion to dismiss.

Plumrose argues that after an award of PPI is made an employee's application for *any* additional compensation must be made within one year from the last date of compensation. In support of this argument, he cites *Gregg v. Sun Oil Co.* (1979), 180 Ind.App. 379, 388 N.E.2d 588, wherein we equated the one year limitation for claiming additional medical expenses with the limitation for claiming increased PPI.

Plumrose's reliance on *Gregg* is misplaced. Our decision in *Gregg* was premised on the fact that I.C. 22–3–3–4, the statute pertaining to an award of medical expenses, "expressly refers to the statutory period applicable to increased permanent partial impairment cases." *Id.*, 388 N.E.2d at 590. I.C. 22–3–3–4 is not pertinent to the award of total disability payments made in the present case.

Plumrose also argues that the one year limitation is applicable because an award of additional disability would be paid "at the impairment rate, not at the disability rate." Appellant's Brief at 15. As noted above, "disability" and "impairment" are completely different concepts. Plumrose fails to show how a similar rate makes the two concepts identical for statute of limitation purposes.

## II. BOARD FINDINGS

Plumrose contends that the Board's award of total disability payments is not supported by adequate findings to indicate the existence of the disability. Plumrose further contends that the award was improper because Ritchie worked after April 16, 1990, the date upon which the disability payments were to retroactively apply.

■ In an appeal from a decision of the Board, this court is bound by the Board's findings of fact and may only consider errors in the Board's conclusions of law. *Duvall v. ICI Americas, Inc.* (1993), Ind.App., 621 N.E.2d 1122, 1124. However, for this standard to apply, the Board must have made specific findings of fact which reveal "the Board's analysis of the evidence and its determination therefrom regarding the various specific issues of fact which bear on the particular claim." *Perez v. United States Steel Corp.* (1981), Ind., 426 N.E.2d 29, 33. The Board must go beyond findings of ultimate fact and state the basic facts which form the basis for its ultimate conclusions. *Id.* Specific findings are necessary to facilitate judicial review, avoid judicial usurpation of administrative functions, assure more careful administrative consideration, help parties plan their cases for rehearings and

judicial review, and keep the agency within its jurisdiction. *Id.* at 31 (citing Davis, 2 *Administrative Law Treatise* § 16.05 p. 444 (1958)).

 In the present case, much evidence was presented to the hearing member in the form of testimony, exhibits, and depositions by a number of doctors and laymen. After reviewing the evidence, the single hearing member made "findings" which are actually conclusions of law; the hearing member did not even attempt to state the factual basis for the conclusions.[3] The Board officially adopted the hearing member's "findings" in making its ruling. The Board additionally found that Ritchie's "injury herein included an injury to that portion of the brain that regulates impulse control and that such injury and lack of impulse control has transformed [Ritchie] from a person who was able to hold employment to his present condition." (R. 68).

The Board's finding would arguably be sufficient to support an initial award of disability. However, in the present case the award is based on a change of condition which occurred after the injury, after the original award, and before the application for change. The Board intimates, but does not state, that the original injury was a progressive injury capable of transforming a presumably productive, but emotionally troubled, worker into a worker with a partial disability and then a partial impairment. The Board also intimates that the original injury ultimately resulted in total disability. Given the necessity of finding a change of condition as a basis for a change of award, the Board's determination is, at best, an incomplete conclusion embracing an ultimate fact. The Board's determination does not include the statement of specific, basic fact required by *Perez.*

In light of the Board's failure to make proper factual findings, we must remand.

---

**3.** In their entirety, the "findings" provide:

    1. That the plaintiff herein is permanently and totally disabled.

    2. It is further found that such benefits shall commence on the last date disability was paid under any pre-existing order or award, with credit against such permanent total disability benefits for the amount of permanent

*CONCLUSION*

The Board was correct in finding that Ritchie's application for change was timely filed. However, the Board failed to make the specific, basic findings necessary to facilitate review of its award of total disability benefits. Accordingly, we reverse and remand to the Board with instructions to make such findings.

Affirmed in part; reversed and remanded in part.

DARDEN and GARRARD, JJ., concur.

partial impairment benefits paid; at the expiration of such credit the defendant shall reinstitute total disability payments, if such payments have not been reinstituted.

    3. It is further found that plaintiff's attorney shall file a petition for attorney fees.... (R. 59).