FLOSSIE IRENE ALLEN *v.* UNITED TELEPHONE COMPANY, INC.

[No. 2-1174A270. Filed April 15, 1976]

*Thaddeus R. Spurgeon,* of Oaklandon, for appellant.

*John T. Lorenz, Frank I. Magers, Kightlinger Young Gray & DeTrude,* of Indianapolis, for appellee.

SULLIVAN, J.—Appellant Flossie Irene Allen (Allen) fell and injured her right hip on December 11, 1967 in an accident arising out of and in the course of her employment with appellee United Telephone Company, Inc. (United). She was released from the hospital on February 1, 1968. Upon her arrival home, Allen attempted to walk from a chair to her bed, and in doing so fell and broke her right leg. United paid all of the medical expenses from these two occurrences except for the services of a practical nurse hired by Allen for 11 weeks following the second fall. United also began paying temporary total disability benefits to Allen beginning December 12, 1967. While attending a funeral, Allen's injured leg collapsed under her and she fell again in November 1970,

breaking her kneecap. United has paid no medical expenses incurred as a result of that accident. At United's suggestion, Allen filed for retirement benefits under United's group pension plan and began receiving benefits on January 1, 1969, when she was 62 years old. She also began drawing Social Security benefits about this time. United continued to pay temporary disability benefits to Allen until November 4, 1969, at which time it had paid 99 weeks of disability benefits.

Allen filed a Form 9 Application for adjustment of her compensation claim with the Industrial Board on December 15, 1969. She alleged that she was totally disabled and did not know how long the disability would last, that she and United were unable to agree on the amount of compensation payable and the duration of time for which it was payable, and asked that disability payments be resumed and that she be given compensation for 30% permanent impairment of the person as a whole.

Being dissatisfied with the determination of the single hearing member, Allen sought review by the Full Industrial Board, which rendered the following findings and award:

"The Full Industrial Board having heard the arguments of counsel and having reviewed all the evidence in said cause and being duly advised in the premises therein, now finds: That on the 11th day of December, 1967, plaintiff was in the employ of the defendant at an average weekly wage of $88.80; that on said date she sustained a personal injury by reason of an accident arising out of and in the course of her employment with the defendant.

It is further found that on said date plaintiff fell suffering bodily injuries involving her right hip while making a bank deposit for her employer.

It is further found that as a result of said fall, plaintiff received extensive hospital and medical care, of which the defendant has paid the sum of $6,857.60.

It is further found that plaintiff was paid temporary total disability benefits at the rate of $51.00 per week for a period of 99 weeks.

It is further found that on February 1, 1968, after plaintiff had been released from the hospital following the original

injury, she fell at home, suffering a fractured femur of the right leg.

It is further found that in September, 1970, plaintiff fell while attending her husband's sister's funeral, suffering a fractured kneecap of the right leg.

It is further found that plaintiff filed for voluntary retirement benefits at the age of 62, beginning January 1, 1969, and has received retirement benefits from the company since said date.

It is further found that at the age of 62 the plaintiff filed and has received retirement benefits under the Social Security program.

It is further found that plaintiff's condition, as a result of said accidental injury of December 11, 1967, has now reached a permanent and quiescent state and has resulted in a 30% permanent partial impairment to the right lower extremity.

It is further found that the plaintiff incurred the services of a Mrs. Hennis, a practical nurse, for a period of 11 weeks following her release from the hospital after being confined on the second accident. There was no evidence that said services were ordered by an attending physician for the injuries received on December 11, 1967.

The Full Industrial Board now finds for the plaintiff and against the defendant on plaintiff's Form 9 Application filed December 15, 1969.

## AWARD

IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the Full Industrial Board of Indiana that the plaintiff shall have and recover of and from the defendant compensation at the rate of $51.00 per week beginning December 11, 1967, for a specific period of 67.5 weeks for her 30% permanent partial impairment to the right lower extremity.

It is further ordered that the defendant shall have credit for 73 weeks compensation paid in excess of the statutory 26 weeks for temporary total disability.

It is further ordered that all accrued payments shall be brought up to date, paid in cash and in a lump sum without the deduction of interest.

It is further ordered that the defendant shall pay the costs, if any, taxed in said cause.

It is further ordered that the fees of the plaintiff's attorney, shall be: a minimum sum of $25.00; and, in addition thereto; 20% upon the first $1,000. recovered; 15% upon the second and third $1,000. recovered; and 10% upon all sums recovered in excess thereof; said fees to be paid by defendant direct to plaintiff's attorney, THADDEUS R. SPURGEON, with credit to the defendant against the compensation herein awarded plaintiff for all sums paid out as attorney fees in accordance with this award."

It is from this award that Allen appeals.

Allen complains that the award of the Industrial Board is so ambiguous that she does not know what, if any, compensation she is entitled to receive. She also argues that the Board erred in not awarding compensation for her second and third falls, and for failing to order reimbursement of the payments she made for the services of the practical nurse. Finally, she asserts that United has acted in bad faith, and should therefore be ordered to pay additional attorney fees.

United answers that the Board, in awarding compensation for 30% of the right lower extremity, considered all three accidents; that that award was sustained by the evidence; that the nursing services were not proved to have been necessary and hence not compensable; and that it acted at all times diligently and in good faith.

This court will not weigh the evidence and, where there is a conflict in the evidence, considers only the evidence which tends to support the Board's award. *Bohn Aluminum & Brass Co. Plant #9* v. *Kinney* (1974), 161 Ind. App. 128, 314 N.E.2d 780; *Callahan* v. *Lovelace Truck Service* (1973), 158 Ind. App. 164, 301 N.E.2d 801.

The Board's finding that Allen's injuries resulted in a 30% permanent partial impairment to the right lower extremity is supported by the testimony of Dr. Rapp, who examined Allen after the second fall and again after the third fall. Since his evaluation included injuries from all three falls, Allen's argument that the Board failed to consider

the last two accidents is in error. While it is true the Board did not order reimbursement for medical expenses incurred as a result of the third accident, there is no evidence in the record of what those expenses were.

Allen's claim for reimbursement for the services of the practical nurse also must fail. The Workmen's Compensation Act provides that the employer must furnish nursing services to the injured employee if the attending physician or the Industrial Board deem the services necessary. Ind. Ann. Stat. 22-3-3-4 (Burns Code Ed. 1974).[1] Nothing in the record indicates that a physician ordered the nursing services. Allen and her husband testified that they hired the nurse because Allen was unable to take care of herself or do her chores when she came home from the hospital following the second accident. It was within the Board's discretion to find, as it did here, that the services were not proved to be necessary within contemplation of the statute.

Allen also argues that the Board erred in not finding her permanently totally disabled. In support of her argument, she points to a letter her attending physician wrote to United's insurance company in December of 1968 in which he said he doubted she would ever return to work, and to her own testimony that she was unable to work. However, the Board accepted Dr. Rapp's testimony that she was only partially impaired. It was not inappropriate for the Board to determine that partial impairment of 30% was insufficient even when considered in light of all other evidence, to establish permanent total disability. We will not disturb that determination. *Bohn Aluminum & Brass Co., Plant #9* v. *Kinney, supra.* Moreover, when injuries stabilize to the point that they come within the schedules of Ind. Ann. Stat. 22-3-3-10 (Burns Code Ed. 1974),[2] the fact that the employee can not return to work does not necessarily compel a finding of

---

1. Minor amendments were made to this section in 1974.
2. This section was amended in 1974 in a manner not relevant to this case.

continuing temporary total disability.[3] As this court said in *Roush* v. *W. R. Duncan & Son* (1932), 96 Ind. App. 122, 183 N.E. 410:

> "When the injury has reached a permanent and quiescent state, as the finding in this case discloses, and such permanent injury comes within the schedule of specific injuries enumerated in section 31 [§ 22-3-3-10, *supra*] of the Workmen's Compensation Law of Indiana, the fact that the employee is unable, on account of his injury, to resume work of the same kind or of the same character as the work in which he was engaged at the time he received the injury, is not such a fact as would of itself defeat a finding that total disability had ended and that permanent partial impairment had ensued. The distinctions between the words 'disability' and 'impairment' as used in the Workmen's Compensation Law, must be kept clearly in mind. By the former is meant an inability, either partial or complete, to work; the latter means a partial or complete loss of the function of a member of the body or of the body as a whole as covered by the Workmen's Compensation Law. [citations omitted] There is, therefore, no legal inconsistency in the finding of the Board that, within the meaning of the Workmen's Compensation Law, the appellant's total disability had ended as of January 28, 1930, and that his injury had resulted in a permanent partial impairment to the extent of the total loss of his right leg." 96 Ind. App. at 130, 183 N.E. at 413.

We do have difficulty, however, with the Board's findings with respect to the duration of Allen's temporary total disability. The compensation period for a temporary total disability award terminates only by the lapse of the maximum time allowed by the statute or by a finding of cessation of disability by the Board either by approval of a final receipt made by the employer and employee or by a *specific* finding. *Hoffman Construction Co.* v. *Working* (1933), 97 Ind. App. 610, 187 N.E. 677; *Ft. Branch Coal Mining Co.* v. *Farley* (1921), 76 Ind. App. 37, 130 N.E. 132. We see no basis for

---

3. We do not address the question whether an impairment award precludes a later determination of permanent total disability. See *Bagwell* v. *Chrysler Corp.* (1976), 168 Ind. App. 137, 341 N.E.2d 799; *Johnson* v. *Thompson & Skinner, Inc.* (1972), 153 Ind. App. 467, 287 N.E.2d 894 at 898.

a different requirement as to contested discontinuance of voluntary disability payments. The only finding that the Board made regarding Allen's disability was that United "paid temporary total disability benefits at the rate of $51.00 per week for a period of 99 weeks." This is not a finding that disability had ceased.[4]

United argues that since Allen received an impairment rating under § 22-3-3-10, *supra,* she is entitled to only 26 weeks of temporary total disability. § 22-3-3-10, *supra,* in effect provides that an injured employee receives compensation for his impairment in addition to twenty-six weeks of temporary total disability. Since United has already paid 99 weeks of temporary disability, thus exceeding the 67.5 weeks awarded under the impairment rating award, it argues it need not pay more.

Under § 22-3-3-10, *supra,* once the Board finds that temporary disability has ceased and sets an impairment rating, the employer is entitled to a credit for amounts it has paid for temporary disability in excess of 26 weeks. *See United States Steel Corp.* v. *Lindsay* (1954), 125 Ind. App. 94, 122 N.E.2d 621; *Snow Hill Coal Corp.* v. *Cook* (1952), 123 Ind. App. 240, 109 N.E.2d 110. That is not to say that an employer is relieved of its obligation to pay temporary total disability benefits while the disability continues and before an impairment rating has been made, even if the ultimate result is that more is paid in disability benefits than the employee is ultimately entitled to because of his impairment. See, for example, the awards in *Flinn* v. *Hartley* (1933), 96 Ind. App. 320, 184 N.E. 915; *Johnson* v. *Cole* (1928), 87 Ind. App. 678, 161 N.E. 700. It is possible, therefore, that Allen is entitled to more benefits for temporary

---

4. Allen points to an additional source of confusion created by the portion of the award which directs "all accrued payments shall be brought up to date, paid in cash and in a lump sum. . . .". Such is arguably inconsistent with the award granted which contemplates no compensation payments over and above those already made. We trust that upon remand the Board will cure this inconsistency.

total disability. However, the failure of the Board to determine when Allen's disability ceased makes it impossible to decide that issue.

Allen asks that we either interpret the Board's award as meaning that her disability continues to the present, or, in light of its finding that her injury had "now reached a permanent and quiescent state", that it did not terminate until the date of the award. This we can not do. The Industrial Board has sole jurisdiction to settle factual disputes between an injured employee and his employer under the Workmen's Compensation Act. Ind. Ann. Stat. 22-3-4-5 through 22-3-4-7 (Burns Code Ed. 1974). Findings of fact made by the Board are binding upon this Court. Ind. Ann. Stat. § 22-3-4-8 (Burns Code Ed. 1974). The Board here made no finding regarding the termination of temporary disability. If we were to "interpret" the award as setting a specific date or as finding that disability continues, we would be usurping the fact-finding function of the Board. We must therefore remand the cause for specific findings regarding the cessation of Allen's disability.

Finally, Allen asserts that United acted in bad faith in settling the claim, and that it failed to pursue settlement diligently, so that additional attorney's fees should be awarded pursuant to Ind. Ann. Stat. § 22-3-4-12 (Burns Code Ed. 1974). The Board found against her on this point, and we can find nothing in the record to indicate that the Board erred in this determination.

The award of the Board is reversed and the cause remanded to the Board with instructions for it to discharge its statutory duty by finding the essential facts with respect to cessation of temporary total disability, and by entering an award based thereon.

Buchanan, P.J., and White, J., concur.

NOTE.—Reported at 345 N.E.2d 261.