JOSE COVARUBIAS *v.* DECATUR CASTING DIVISION OF HAMILTON ALLIED CORPORATION.

[No. 2-775A184. Filed December 20, 1976.]

*Richard C. Ver Wiebe,* of Fort Wayne, for appellant.

*William C. Lee, Hunt, Suedhoff, Borror, Eilbacher & Lee,* of Fort Wayne, for appellee.

SULLIVAN, J.—Appellant Jose Covarubias (Covarubias) injured his back while lifting molds weighing from 75 to 250 pounds in the course of his employment with Appellee Decatur Casting on June 2, 1971. After staying home for 2 weeks, he returned to Decatur Casting, but was not able to perform the work. He therefore left his employment with Decatur Casting on August 19, 1971, and has not worked since that date. Over the next two years, Covarubias consulted a number of physicians in an attempt to alleviate back pain. On April 26, 1973, he filed an application with the Industrial Board seeking compensation for total disability. Following a hearing on his application, the hearing member found Covarubias to be impaired 15% of the person as a whole, and awarded him benefits accordingly. Covarubias appealed this decision to the Full Industrial Board, which affirmed the findings and decision of the hearing member. It is this award which Covarubias asks us to review.

Covarubias argues that the only evidence of probative value before the Board indicates that he is unable to return to work of the same kind and character, and that his inability to do so constitutes permanent total disability within the meaning

of the Workmen's Compensation Act. Ind. Ann. Stat. 22-3-3-10(b) (3) (Burns Code Ed. 1974).

We affirm the award of the Industrial Board.

Conflicting evidence of the extent of Covarubias' injury was offered at the hearing. Covarubias, his wife, and a neighbor testified that since his accident he experienced considerable pain, was unable to bend over or to lift heavy objects, could not sit for any period of time, and was unable to climb a ladder without assistance. He also demonstrated for the hearing officer a limited ability to bend.

Other witnesses, however, testified that they had observed Covarubias carrying 4' x 8' sheets of plywood and cardboard boxes the size of file drawers, building a room on the side of his home, building an 8' x 14' truck bed from heavy plank lumber, loading and unloading boxes from the trunk of his car, lifting a 700 to 800 pound hog from the trunk of his car with the assistance of two other men, using a ramrod to clear the sewer, and ascending and descending a ladder to work on shingles or a gutter of his home. Witnesses testifying to these activities agreed that Covarubias showed no sign of disability or impairment. Films of Covarubias loading and unloading boxes from his car were introduced into evidence.

Depositions of three persons who had treated Covarubias (a chiropractor, a neurological surgeon, and an orthopedic surgeon) were also admitted. The chiropractor rated Covarubias' impairment at 18.5% of the person as a whole, while the other two rated his impairment at 10%. The two surgeons were unable to find objective causes of Covarubias' pain and consequent limitation of motion. General observations, x-rays, a myelogram, and exploratory surgery all resulted in normal findings. All three experts agreed that Covarubias would probably be unable to ever do the kind of heavy lifting that he had done with Decatur Casting because of the pain he apparently experienced.

The evidence clearly supports the Board's determination that Covarubias is not permanently totally disabled, although he has a permanent partial impairment of 15% of the person as a whole.

Covarubias' primary argument is that he is permanently totally disabled because he is unable to return to work *of the same kind and character* as that he was doing at the time of his injury. This argument overlooks the distinction between *temporary* total disability and *permanent* total disability. Temporary total disability payments are intended to compensate the employee for the treatment period immediately following the injury. Ind. Ann. Stat. 22-3-3-7 (Burns Code Ed. 1974) ;[1] *French* v. *ICI America, Inc.* (1976), 169 Ind. App. 601, 349 N.E.2d 715; *Allen* v. *United Telephone Co.* (1976), 168 Ind. App. 696, 345 N.E.2d 261; *Callahan* v. *Lovelace Truck Service* (1971), 149 Ind. App. 314, 271 N.E.2d 734; *Callahan* v. *Lovelace Truck Service* (1973), 158 Ind. App. 164, 301 N.E.2d 801; *Callahan* v. *Lovelace Truck Service* (1976), 169 Ind. App. 162, 346 N.E. 2d 623.

It is during this period that ability to return to work of the same kind or character is relevant to a workmen's compensation award. Once the injury has reached a permanent and quiescent state, however, the treatment period ends, and the extent of the permanent injury is assessed for compensation purposes. Permanent total disability and permanent partial impairment are intended to compensate for this permanent loss. Ind. Ann. Stat. 22-3-3-10 (Burns Code Ed. 1974) ; *Allen* v. *United Telephone Co., supra; Callahan* v. *Lovelace Truck Service, supra,* 346 N.E.2d at 624.

Thus once the injury has stabilized to a permanent and quiescent state, *temporary* disability ceases, and the extent of *permanent* injury resulting in a degree of impairment *or*

---

1. Minor amendments were made to this section in 1974.

total disability is determined pursuant to the schedules in Ind. Ann. Stat. 22-3-3-10, *supra*. As we said in *Allen* v. *United Telephone Co.* (1976), 168 Ind. App. 696, 345 N.E.2d 261, 265, quoting *Roush* v. *W. R. Duncan & Son* (1932), 96 Ind. App. 122, 130, 183 N.E.2d 410, 413:

"When the injury has reached a permanent and quiescent state, as the finding in this case discloses, and such permanent injury comes within the schedule of specific injuries enumerated in section 31 [§ 22-3-3-10, *supra*] of the Workmen's Compensation Law of Indiana, *the fact that the employee is unable, on account of his injury, to resume work of the same character as the work in which he was engaged at the time he received the injury, is not such a fact as would of itself defeat a finding that total disability had ended and that permanent partial impairment had ensued.* The distinctions between the words 'disability' and 'impairment' as used in the Workmen's Compensation Law must be kept clearly in mind. By the former is meant an inability, either partial or complete, to work; the latter means a partial or complete loss of the function of a member of the body or of the body as a whole as covered by the Workmen's Compensation Law. [citations omitted] There is therefore no legal inconsistency in the finding of the board that within the meaning of the Workmen's Compensation Law that the appellant's total disability had ended as of January 28, 1930, and that his injury had resulted in a permanent partial impairment to the extent of the total loss of his right leg." 96 Ind. App. at 130, 183 N.E. at 413. (Emphasis supplied). *See* also, *Callahan* v. *Lovelace Truck Service* (1976), 169 Ind. App. 162, 346 N.E.2d 623.

The award of the Full Industrial Board is affirmed.

White and Lowdermilk, JJ. (participating by designation), concur.

NOTE.—Reported at 358 N.E.2d 174.