**Woodrow TALAS, Appellant–Plaintiff Below,**

v.

**CORRECT PIPING COMPANY, INC., Appellee–Defendant Below.**

**No. 2–680A193.**

Court of Appeals of Indiana, First District.

Sept. 24, 1980.

Rehearing Denied Oct. 23, 1980.

Michael R. Morow, Munster, Leonard M. Ring & Assoc., Chicago, Ill., for appellant.

Samuel J. Furlin, Spangler, Jennings, Spangler & Dougherty, P. C., Merrillville, for appellee.

ROBERTSON, Presiding Judge.

Woodrow Talas (Talas) was injured when he fell from some scaffolding during the course of his employment with Correct Piping Co., Inc. (Correct). As a result of this accident, Mr. Talas is now a traumatic quadriplegic. This appeal resulted from the denial by the Full Industrial Board of Indiana (Board) of Talas's emergency petition for additional care. We affirm.

The record reveals that Talas suffered his injury on June 25, 1978. Talas was in the hospital until August 3, 1978, at which time he was transferred to the Rehabilitation Institute of Chicago, in Chicago, Illinois. Talas was released on January 19, 1979, although he still returns for check–ups. Talas received around–the–clock nursing care at his home from January 19, 1979, until June 16, 1979. Expenses for this care were paid by Correct's insurance carrier until May 13, 1979. Talas currently has a nurse's aid care for him at his home eight hours a day, and a licensed practical nurse who comes by his home on a bi–weekly basis. Talas testified that during the period in which he had continuous nursing care, his physical feelings and motions began to improve, but that now, since he only has an attendant for eight hours a day, his joints are getting stiffer and he's not able to function as well as before.

The Board approved a Form 12 agreement between Talas and Correct on April 6, 1979. That agreement listed the length of temporary disability as being June 26, 1978, through December 6, 1978. Further, the agreement declared that compensation was "based upon 100% permanent impairment of the man as a whole and 100% total permanent disability." The Form 12 agreement contained the further proviso that:

> It is agreed that the injury is in a permanent and quiescent state. It is further agreed that the question of continuing treatment for the employee's injuries, including surgical hospital and nursing services and supplies, has not been agreed upon, and shall be left to the determina-

tion of the Industrial Board upon proper hearing pursuant to the Workmen's Compensation Act of the State of Indiana.

Talas filed his emergency petition for a hearing to determine Correct's liability for nursing care needed to sustain his life on September 21, 1979. A hearing was held on November 28, 1979, and the hearing officer's findings and order were issued December 21, 1979. This order recognized Talas's 100% total permanent disability, and that the Industrial Board may require the employer to furnish further treatment to limit or reduce the amount and extent of such impairment. The order directed Correct to pay and continue to pay "all the medical and nursing care needed by plaintiff as a result of his said accidental injury, in order to reduce his disability or impairment."

Correct filed for review by the full Board on December 28, 1979, and on May 22, 1980, the Board overruled the single hearing member's decision on the emergency petition, and directed that Talas take nothing by way of the petition.

On appeal, Talas argues that: continuing medical and nursing expenses were never agreed to by way of the Form 12 agreement, and that the issue was left open for a determination by the Industrial Board; he is not in a permanent and quiescent state for the purposes of the medical payments provisions of the Indiana Workmen's Compensation Act; medical payments should have been awarded under any of the four time periods set forth in the Act, and; the findings were insufficient in view of the uncontradicted evidence.

■ We note initially, the distinction between temporary total disability and permanent total disability. Temporary total disability involves the period immediately following the injury. During this period, the ability to return to work of the same kind or character is relevant to the workmen's compensation award. When the injury has reached a permanent and quiescent state, however, the temporary period ends, and the extent of permanent injury is assessed for compensation purposes. Once the injured party reaches this state, the degree of impairment or total disability is determined. See *Covarubias v. Decatur Casting*, (1976) Ind.App., 358 N.E.2d 174; *Dennison v. Martin, Inc.*, (1979) Ind.App., 395 N.E.2d 826; *White v. Woolery Stone Co., Inc.*, (1979) Ind.App., 396 N.E.2d 137.

■ It is also appropriate to reiterate that on appeal, this court may not weigh the evidence, and where there is a conflict in the evidence, we can only consider that evidence which tends to support the Board's award. *White v. Woolery Stone Co., Inc., supra; Allen v. United Telephone Co., Inc.*, (1976) 168 Ind.App. 696, 345 N.E.2d 261. Furthermore, we cannot reverse a finding of the Board unless the evidence and all reasonable inferences are so conclusive as to require a contrary finding. *Pike County Highway v. Fowler*, (1979) Ind.App., 388 N.E.2d 630; *Penn–Dixie Steel Corp. v. Savage*, (1979) Ind.App., 390 N.E.2d 203.

■ Next, we must determine the effect of the Form 12 agreement entered into between the parties on April 6, 1979. It seems clear that the impact of Form 12 is such that if it is approved by the Board, it shall for all purposes be enforceable by the court, and has the same effect as any award the Board might have made. *Ft. Wayne Public Library v. Kintanar*, (1977) Ind.App., 363 N.E.2d 1034; *Evans v. Enoco Collieries, Inc.*, (1964) 137 Ind.App. 11, 202 N.E.2d 595; *In re Stone*, (1917) 66 Ind.App. 38, 117 N.E. 669. It is evident, therefore, that as a result of the Form 12 agreement, we must accept as the Board's findings: that Talas was 100% permanently totally disabled; that the injury was in a permanent and quiescent state; that the question of continuing medical treatment was an open question to be determined by the Board, and; that the period of temporary total disability ended on December 6, 1979.

■ We now turn to Talas's specific contentions of error. First, Talas argues

that continuing medical and nursing expenses were never agreed to by way of the Form 12 agreement, and that the issue was left open for a determination by the Board. We agree with this statement, as does Correct. An incomplete agreement approved by the Board does not terminate the Board's jurisdiction. *In re Stone, supra; Standard Cabinet Manufacturing Co. v. Iliff*, (1918) 67 Ind.App. 568, 119 N.E. 479. Talas had the Board review his emergency petition for continuing medical and nursing services, and the Board rejected his claim. It appears that the portion of the Form 12 agreement cited earlier dealing with this topic was satisfied, and Talas was in no way restricted in his hearing for continuing treatment. We fail to perceive any error.

■ Second, Talas contends that he is not in a permanent and quiescent state for the purposes of medical payments under the Act. We must disagree. The Form 12 agreement stipulated that Talas was in a permanent and quiescent state. Talas's own treating physician, in a letter to Talas's attorney, stated that "Mr. Talas has reached a 'permanent and quiescent state'." In addition to this statement, there was other evidence to support the decision that Talas's condition had reached this settled state. The evidence in the record does not lead us inescapably to a result contrary than that reached by the Board. Given our standard of appellate review, we are constrained to agree with the Board's decision that Talas had reached a permanent and quiescent state for the purposes of medical payments.

Third, Talas alleges that under the Act, medical payments should have been awarded under any of the four payment provisions. Ind.Code 22-3-3-4 provides payment for medical, surgical, hospital and nursing services at four different times:

(1) After an injury and prior to an adjudication of permanent injury;

(2) During the period of temporary total disability resulting from the injury;

(3) After an employee's injury has been adjudicated by agreement or award on the basis of permanent partial impairment . . . as necessary to reduce the amount and extent of such impairment, and;

(4) In an emergency or because of the employer's failure to provide attending physician. . . .

■ Section four is clearly not applicable in the first two instances. Correct's carrier did pay all medical expenses prior to the adjudication of permanent impairment, and the record discloses the carrier even paid some expenses after that date and until May 13, 1979. It should be remembered that the Form 12 agreement declares that the temporary disability ended on December 6, 1978. Therefore, the Board could make no award under the first clause. The same result must be reached under the second clause, because Talas is making a claim in his emergency petition for expenses incurred *after* the determination was made as to his permanent total disability, and clause two deals with situations occurring *during* the period of temporary disability. Consequently, no award was possible under this clause.

■ Clause three of section 4 provides the only real issue as to medical payments, as it is directed toward reducing and limiting the extent of the impairment. Once again, however, we are constrained by our standard of review on this issue. The question of whether any improvement was possible was a question of fact to be determined by the Board. There was competent evidence in the record that the amount and extent of the impairment would never be reduced, and that Talas required only maintenance treatment. Although Talas testified that he had experienced physical improvement when he received around–the–clock nursing care, the resolution of this conflicting testimony was for the Board. Ind.Code 22-3-4-8 provides that an award of the full board shall be conclusive and

binding as to all questions of fact. From the Board's order, they must have determined that there was no care available to reduce Talas's 100% impairment. While we sympathize with Mr. Talas's plight, the Board's determination on this clause must also be upheld.

Clause four of section 4 applies only to an emergency during the period of an employee's *temporary* total disability. As Talas's emergency petition requested payment for care after a determination of *permanent* total disability, an award under this clause would also be improper. Additionally, it should be noted that emergency costs incurred under this clause are to be paid by the employer subject to the approval of the Board.

Lastly, Talas contends the Board's findings were insufficient in view of the uncontradicted evidence. We do not find the evidence to be uncontradicted. Although we agree that the findings of the Board are at best minimally adequate due to the circumstances of the case, the record before this court, and the standard of appellate review, the findings are sufficient to allow us to review the Board's determination. *See Penn–Dixie Steel Corp. v. Savage*, (1979) Ind.App., 390 N.E.2d 203. In reviewing the record, we find there was sufficient evidence to support the Board's finding. In addition to the Form 12 agreement, there were letters written by Talas's attending physician, along with his testimony as to Talas's condition. The Board's order impliedly determines that because of the conflicting evidence, it did not feel Talas would be able to reduce the amount and extent of his impairment, and that all he required was maintenance care.

Judgment affirmed.

NEAL and RATLIFF, JJ., concur.