Evelia R. KOHLMAN, Appellant–
Plaintiff,

v.

INDIANA UNIVERSITY,
Appellee–Defendant.

No. 93A02–9512–EX–750.

Court of Appeals of Indiana.

Aug. 19, 1996.

Rehearing Denied Sept. 25, 1996.

Phillip J. Troyer, John H. Shean, Shean
Law Offices, Bloomington, for Appellant–
Plaintiff.

Kathleen K. Shortridge, Ice Miller Dona-
dio & Ryan, Indianapolis, for Appellee–De-
fendant.

## OPINION

FRIEDLANDER, Judge.

Evelia R. Kohlman appeals a negative
award entered by the Worker's Compensa-
tion Board of Indiana (the Board), which
denied her request for temporary partial dis-
ability benefits, presenting the following re-
stated issue for review:

> Does the Indiana Worker's Compensation
> Act permit an employer to deny TPD ben-
> efits after an employee's injuries have
> reached a permanent and quiescent state?

We affirm.

The facts favorable to the judgment are
that on September 15, 1993, Kohlman was
driving a bus for her employer, Indiana Uni-
versity (I.U.) when she hit a "pothole". The
force of the impact jerked the steering wheel,
resulting in injury to Kohlman's neck, wrist,
hand, arm, and shoulder. I.U. acknowledged
liability for Kohlman's injuries under the
Indiana Worker's Compensation Act (the
Act) and, pursuant to an agreement, paid
Kohlman $246.13 per week in temporary to-
tal disability benefits (TTD) during the time
she was unable to work.

In December of 1993, Kohlman's treating
physician released her to return to work with
restrictions which prevented her from driv-
ing a bus. Kohlman sought treatment from
her own physician, who released her to re-
turn to work on January 16, 1995, with simi-
lar work restrictions. Kohlman's physician
declared that she had a 4% permanent par-
tial impairment (PPI) rating. Because of the
physical restrictions placed upon her, Kohl-
man was unable to return to her previous
job. Instead, she returned to work for I.U.
as a receptionist, earning $170.85 per week.

In addition to paying TTD benefits while
she was unable to work, I.U. also compensat-
ed Kohlman in the amount of $2,000 based
upon the 4% permanent impairment rating
and paid all of her medical bills. A hearing
was conducted before a single member of the
Board, at which time the parties stipulated

that the only issue was whether Kohlman was entitled to temporary partial disability (TPD) benefits because of the continuing wage loss she incurred as a result of the permanent restrictions placed upon her. Following a hearing before a single Board member, Kohlman was denied TPD benefits. The hearing officer entered the following findings and conclusions:

> The sole issue presented in this case is whether or not plaintiff is entitled to temporary partial disability benefits because of the continuing wage loss she is currently suffering as a result of the permanent restrictions placed upon her.

> Without addressing each argument advanced by plaintiff in her well-presented Memorandum of Law, the issue is best addressed by the quotation for [sic] *Covarubias v. Decatur Casting, etc.*, 171 Ind. App. 533, 358 N.E.2d 174 (2 Dist.1976) contained in page 11 of plaintiff's memorandum.

>> Once the injury has reached a permanent and quiescent state, however, the treatment period ends, and the extent of the permanent injury is assessed for compensation purposes. Permanent total disability and permanent partial impairment are intended to compensate for this permanent loss.

>> Thus once the injury has stabilized to a permanent and quiescent state, *temporary disability* ceases, and the extent of permanent injury resulting in a degree of impairment or total disability is determined pursuant to the schedules in *Ind. Ann. Stat.* 22–3–3–10, *supra.* (Emphasis added)

> This page leads to the conclusion that temporary partial disability ceases once an injury has stabilized to a permanent nd [sic] quiescent state.

> Temporary total disability and temporary partial disability are two legislative schemes for compensating injured employees during a period of temporary disability. The two schemes have similarities and differences. Both are intended to provide wage replacement benefits during the injured employee's period of disability. The

language of *Covarubias* quoted above encompasses both forms of benefits and instructs that such benefits cease once permanence and quiescence is realized.

> Said hearing judge now finds for the defendant and against plaintiff on plaintiff's Application for Benefits filed April 20, 1994.

*Record* at 59–60. Kohlman appealed to the full Board, which rejected her argument that there was no statutory authority for the denial of TPD benefits. Kohlman appeals the Board's denial.[1]

Kohlman contends that the following provision authorizes TPD benefits in the instant case:

> With respect to injuries occurring on and after July 1, 1974 causing *temporary partial disability* for work, compensation shall be paid to the injured employee *during such disability* as prescribed in section 7 of this chapter, a weekly compensation equal to 66 and 2/3rds percent of the difference between his average weekly wages and the weekly wages at which he is actually employed after the injury, for a period not to exceed 300 weeks....

Ind.Code Ann. § 22–3–3–9 (West 1991) (emphasis supplied). Subsection 9 undeniably creates an obligation on the part of employers to pay TPD benefits under certain circumstances. However, determining the scope and duration of that obligation requires that we consider other relevant provisions of the Act in conjunction with subsection 9. This is especially true when determining the availability of TPD benefits after an employee receives compensation for permanent impairment.

■ This court has determined that an employer may terminate temporary disability benefits once the permanency of the employee's injury has been established. In *Covarubias v. Decatur Casting, etc.*, 171 Ind.App. 533, 358 N.E.2d 174 (1976), we stated:

> [O]nce the injury has stabilized to a permanent and quiescent state, *temporary disability* ceases, and the extent of *permanent* injury resulting in a degree of impair-

---

**1.** This court heard oral argument in Indianapolis   on April 23, 1996.

ment *or* total disability is determined pursuant to the schedules in Ind.Ann.Stat. 22–3–3–10. . . .

*Id.,* 358 N.E.2d at 176 (emphasis in original).

In *Covarubias,* the claimant argued that he was permanently and totally disabled because he was unable to return to work of the same kind and character as that which he was doing at the time of the injury. In response to that contention, this court observed that "this argument overlooks the distinction between *'temporary* total disability' and *'permanent* total disability'" [emphasis in original]. *Id.,* 358 N.E.2d at 176. We then determined that:

> Temporary total disability payments are intended to compensate the employee for the treatment period immediately following the injury. . . . It is during this period that the ability to return to work of the same kind or character is relevant to a workmen's compensation claim. Once the treatment has reached a permanent and quiescent state, however, the treatment period ends, and the extent of the permanent injury is assessed for compensation purposes. Permanent total disability and permanent partial impairment are intended to compensate for this permanent loss. . . .

*Id.,* 358 N.E.2d at 176. While the *Covarubias* panel confronted the question in the context of total, as opposed to partial, disability benefits, the principle underlying that decision is equally applicable, and dispositive, in the instant case: once the physical condition is quiescent, temporary disability ceases and the only compensation available is that prescribed for permanent impairment, as set out in IC § 22–3–3–10. *Id.,* 171 Ind.App. 533, 358 N.E.2d 174. In so concluding, we reject Kohlman's contention that *Covarubias* was erroneously decided.

The applicable portion of Section 10 of the Act provides:

> With respect to injuries in the following schedule occurring on and after July 1, 1991, the employee shall receive *in addition to temporary total disability benefits,* not exceeding one hundred twenty-five (125) weeks on account of the injuries, weekly compensation of. . . .

(Emphasis supplied.) Kohlman argues, "[u]nder this . . . statutory language, the employee is no longer required to repay all temporary disability benefits received prior to becoming eligible for the scheduled benefits. Instead, the employee is now entitled to recover temporary disability benefits *and* compensation for his or her physical impairment." Appellant's Brief at 16 (emphasis in original). Kohlman is essentially arguing that her physical condition can be permanent and quiescent, that she can receive compensation for her permanent impairment, and that she can receive at the same time temporary disability benefits.

Kohlman's contention that Section 10 authorizes TPD after quiesence has been established is flawed in one notable respect: the provision in question mentions only temporary *total* disability benefits, not temporary *partial* disability benefits. The Act, whether in Section 10 or elsewhere, simply does not provide claimants with the right to receive temporary disability benefits for the permanent effects of an injury. Because Kohlman's condition was permanent and she was admittedly not permanently and totally disabled, her only remedy under the Act was to receive benefits for permanent partial impairment, which were awarded. *Covarubias,* 171 Ind.App. 533, 358 N.E.2d 174.

In summary, no provision in the Act indicates that an employer is obligated to pay temporary partial disability benefits after the claimant's condition becomes permanent and quiescent. Therefore, we reaffirm the *Covarubias* panel's holding that the right to receive temporary benefits ceases when the worker's physical condition reaches a quiescent state.

Finally, Kohlman argues that the $2,000 she received for her loss of physical function is unfair because it does not counteract the $10,000 wage loss for the year. While we are sympathetic to Kohlman's plight, the scheme of compensation for permanent physical impairment set out in the Act was not intended to accomplish a replacement of lost wages. Rather, worker's compensation is a series of carefully balanced compromises designed to share the social costs of work injuries:

A compensation system, unlike a tort recovery, does not pretend to restore the claimant what he has lost.... It was never intended that compensation payment should equal actual loss....

*Larson, Workmen's Compensation Law,* Vol. 1, § 2.50 at 1–11, 1–12. Although our courts have adopted a somewhat liberal construction of the Act, we will not expand compensation for a claimant in violation of the specific terms of the statute. *See J.W. Jackson Realty Co. v. Herzberger,* 111 Ind.App. 432, 40 N.E.2d 379 (1942).

We conclude that the Board correctly determined that I.U.'s denial of Kohlman's request for temporary partial disability benefits was appropriate.

Judgment affirmed.

SHARPNACK, C.J., concurs.

SULLIVAN, J., concurs in result with separate opinion.

SULLIVAN, Judge, concurring in result.

It appears that many jurisdictions make permanent partial awards not for physical injury as such but for "disability" produced by the physical condition. 1C *Larson Workmen's Compensation Law* § 57.11 (1996). Such treatment would account for the use of the words "injury", "impairment" and "disability" interchangeably. Even the *Larson* treatise itself uses the phrase "permanent *disability* " (emphasis supplied), when referring only to an award for purely physical functional loss. *Id.,* § 57.13. That is not the case in Indiana. In this state the word "impairment" refers to the physical injury itself and an award therefor is to compensate for the loss of physical function. On the other hand, an award for disability, whether temporary or permanent, is to compensate for the wage loss occasioned by the injury. Under the Indiana statutory scheme it is therefore possible and permissible to receive monetary compensation in the form of an award for an impairment rating made when the injury has reached a permanent and quiescent state, and in addition thereto to have received a disability award for temporarily lost wages during the initial period of treatment and recuperation and/or to thereafter receive an award for permanent wage loss occasioned by the physical functional impairment.

The Indiana statutory scheme does not imply strict finality to a determination of a permanent and quiescent state with regard to the injury. To the contrary, I.C. 22–3–3–27 expressly provides for modification of an award based upon changed conditions. Accordingly, what at the time of an original award was thought to be a permanent impairment of, for example as here, 4%, may thereafter be determined to be worse than originally determined. In such a case benefits may be continued or extended. Under such a scenario, an initial impairment rating, which may not have been so serious as to result in an employment disability, may have worsened to the extent of causing total or partial disability. In such a circumstance I cannot find statutory preclusion to the ability of a claimant to seek and obtain disability benefits in addition to the impairment award payments, assuming the claim is within the permissible time frame and further assuming maximum benefits have not already been received.

In this regard, I must point to language used by myself in *Covarubias v. Decatur Casting* (1976) 171 Ind.App. 533, 358 N.E.2d 174, and which now appears to have been ill advised and unduly broad. As quoted by the majority here, that case states:

> [O]nce the injury has stabilized to a permanent and quiescent state, temporary disability ceases, and the extent of permanent injury resulting in a degree of impairment *or* total disability is determined.

(emphasis deleted from original) 171 Ind. App. at 536–37, 358 N.E.2d at 176. This phrasing is susceptible to a construction that once the physical condition has become permanent and quiescent so as to permit an impairment rating for award purposes, a claimant may receive an impairment award *or* a total disability award, but not both. In light of the views which I now hold, I must retreat from any such construction of the *Covarubias* language and must instead point to a comment in *Allen v. United Tel. Co.* (1976) 168 Ind.App. 696, 345 N.E.2d 261,

which left the door open for a future determination as to "whether an impairment award precludes a later determination of permanent total disability". 168 Ind.App. at 702 n. 3, 345 N.E.2d at 696 n. 3. Two cases cited in the *Allen* footnote, *Bagwell v. Chrysler Corp.* (1976) 168 Ind.App. 110, 341 N.E.2d 799, and *Johnson v. Thomas & Skinner, Inc.* (1972) 153 Ind.App. 467, 287 N.E.2d 894, suggest that an increased degree of impairment may permit not only a modification of the impairment award but also a first time claim for disability benefits so long as statutory time constraints and maximum benefit amounts are honored.

The fact that one's physical condition has been determined to be stabilized indicates that an assessment of that physical condition may be made for purposes of an impairment rating percentage award and also for purposes of determining whether the person is totally or partially disabled. This determination carries with it an aura of finality or permanence but of course, if the physical condition should unexpectedly become worse or should the person's employment situation change, the case can be reopened and reexamined. *Larson, supra* § 57.12(d). The fact that a total permanent disability award is made, whether coupled with a separate impairment award or not, does not necessarily foreclose future changes in the physical condition and/or ability to work, nor does it foreclose the ability, if procedurally permitted, to obtain a modification in any monetary benefits awarded. In short, it is too simplistic to state that once an impairment rating is made and benefits paid accordingly, such award is intended to be all-inclusive and to foreclose any future claim for a disability award, if such disability award is otherwise appropriate under the evidence and within the time limitations of the statute.

The illogic and unfairness of the "either/or" theory adopted by the majority is demonstrated by a New York case in which the court avoided an unfair denial of total disability to a claimant who had a factually determinable permanent and quiescent hearing loss of 19.2%.[2] *Cecere v. County of Niagara* (1979) N.Y.App.Div., 71 A.D.2d 759, 419 N.Y.S.2d 315. In that case, claimant had a 100% hearing loss in one ear due to an unrelated pre-existing condition. As a result of a subsequent work related injury he sustained a permanent 19.2% hearing loss in the other ear. The latter condition rendered him totally disabled. In order to avoid the dilemma presented by the permanent and quiescent state of the physical condition, the court seized upon evidence that the claimant was "inquiring about more effective hearing aids or anything else that could improve his hearing". 71 A.D.2d at 760, 419 N.Y.S.2d at 316. The court then concluded that because the claimant's medical condition was "unsettled", total disability payments were appropriate rather than the inadequate amount provided in the statutory schedule for hearing loss. The better solution is that afforded by what I deem to be the compatible and non-exclusive methods in Indiana which permit disability awards as well as impairment awards.

Nevertheless, this conclusion does not lead me to accept Kohlman's contention that she is entitled to partial disability payments under the facts or under the legal argument which she makes. In short, Kohlman seeks to acquire partial disability benefits based upon an analysis of statutory provisions which deal only with temporary total disability. Accordingly, although I disagree with the majority in its holding that when a physical impairment condition has reached a permanent and quiescent state, and an impairment award has been made, there cannot be an award for disability benefits, I nevertheless agree that in the case before us Kohlman's request for temporary partial disability benefits was properly denied. For this reason I concur in the affirmance.

---

2. The word "quiescent" is defined as "[a]t rest or inactive". *Stedman's Medical Dictionary* (25th Ed.1990); "not getting worse". 3 *Schmidt's At-* *torneys' Dictionary of Medicine* (1990). The word does not connote finality or unchangeability.