Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEYS FOR APPELLANT:

**CARLA R. HOUNSHEL**
**R. JAY TAYLOR, JR.**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**GERALD H. MCGLONE**
Terre Haute, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PATSY MOORE, d/b/a CAT DOG TRUCKING | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1308-EX-00693 |
| | ) | |
| ROGER JERRELL, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE INDIANA WORKER'S COMPENSATION BOARD
The Honorable Linda Hamilton, Chairwoman
Case No. C-187635

**February 7, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Cat Dog Trucking ("Cat Dog") appeals an order of the Worker's Compensation Board ("the Board") awarding benefits to former Cat Dog employee Roger Jerrell ("Jerrell") for injuries he suffered during an accident on the job. Cat Dog presents three issues on appeal, which we restate as:

I. Whether the Board erred in awarding permanent partial impairment ("PPI") benefits to Jerrell payable over a period of 500 weeks;

II. Whether the Board erred in failing to credit Cat Dog for all of the temporary total disability ("TTD") benefits Cat Dog paid to Jerrell; and

III. Whether the Board erred in failing to credit Cat Dog for home healthcare services it claims that it provided to Jerrell.

We affirm.

**Facts and Procedural History**

Jerrell is a former employee of Cat Dog, a trucking company. On December 8, 2006, Jerrell was at work when his clothes caught fire, causing him to suffer burns to 51% of his body. As a result of the burns, one of Jerrell's legs was amputated above the knee, and the other leg was amputated below the knee. His left hand, which was previously his dominant hand, was seriously impaired by the burns, as was his left arm. He has no prostheses and uses a motorized wheelchair. Jerrell cannot walk, lift his arms above his head, grip with his left hand, cook, clean, do laundry, or dress himself without assistance.

Cat Dog began making TTD payments of $166.75 per week to Jerrell on the date of his injury, December 8, 2006, and continued making these payments until approximately July 17, 2013. Although Cat Dog did not disagree that Jerrell was

2

permanently and totally disabled as a result of his injuries, eventually, a dispute arose between the parties as to the nature and scope of the relief to which Jerrell was entitled. On July 20, 2007, Jerrell filed an application of adjustment of claim with the Board.

On November 21, 2007, Jerrell's condition became permanent and quiescent, and he was moved to a nursing home. According to the Board's findings of facts, roughly 18 month later, on May 7, 2009, Jerrell moved into a rented home in Linton, Indiana to live with his mother, Alice Zimmerman ("Zimmerman").[1] From the time Jerrell moved in with his mother until December 10, 2010, Cat Dog paid Jerrell $160.00 every two weeks so that Jerrell could compensate his mother for two hours of care, four days per week, at a rate of $10.00 per hour. During this time, Zimmerman provided all of the fifty-six hours per week of home health care recommended by two of Jerrell's physicians, Dr. Esguerra and Dr. Dietzen.

On December 10, 2010, Cat Dog stopped paying for care provided by Zimmerman and began instead to provide care directly through an outside agency. The aides employed by the agency cared for Jerrell for two hours per day, seven days per week. Any additional care was provided by Zimmerman without compensation.[2]

On November 14, 2011, the Board's single hearing member held a hearing regarding benefits due to Jerrell, then continued the matter for further briefing on the issue of Jerrell's PPI award. On January 19, 2012, the hearing member issued its findings of fact and conclusions of law, concluding that Jerrell's PPI award was valued at

---

[1] Jerrell asserts that he moved into his mother's home on August 24, 2008. Appellee's App. pp. 32, 62.

[2] Until November 15, 2012, when the decision of the single hearing member took effect.

3

$250,000.   The hearing member heard the remaining issues on March 19, 2012.   On November 1, 2012, the hearing member entered an order, which found, among other things, that Jerrell moved into his mother's house on May 7, 2009 and which concluded, in relevant part, that:

> 2. Plaintiff is entitled to an Award beginning May 7, 2009 for up to fifty-six (56) hours per week of home healthcare at the expense of Defendant as a statutory medical expense.
>
> 3. For the period beginning May 7, 2009 to December 10, 2010, Plaintiff is entitled to a payment for amounts owed his mother at the rate of Ten Dollars ($10.00) per hour as a statutory medical expense.
>
> * * *
>
> 7. Defendant is entitled to a credit against the permanent partial impairment value for all compensation paid to Plaintiff after November 21, 2007.

Appellee's App. pp. 13-14.

Two weeks after the issuance of the hearing member's order, on November 15, 2012, Cat Dog began providing fifty-six hours of care per week to Jerrell.   On November 28, 2012, Cat Dog sought the full Board's review.   A hearing was held by the full Board on May 13 2013.   On July 17, 2013, the full Board issued its findings of fact and conclusions of law, affirming the single hearing member's decision, adopting its conclusions regarding the home healthcare service awards to Jerrell, and further providing that:

> 7. The parties do not dispute the Single Hearing Member's January 19, 2012 Order determining permanent partial impairment but disputed the manner in which the award should be paid.   At Full Board hearing in this matter, Defendant argued that the impairment award should be paid in weekly installments of $166.75.

4

8. Under this scenario, payment of the impairment award would take approximately twenty-eight (28) years. Alternatively, taking into account the "doubling" provision at Ind. Code § 22-3-3-l0(c)(2) for amputation injuries, the award could be deemed payable in weekly installments of $333.50 over a period of approximately fourteen (14) years.

\* \* \*

10. The Board finds and concludes that Plaintiff sustained a direct impairment as a result of the December 8, 2006 accidental injury. As such, the permanent partial impairment award should be payable beginning as of the date of injury, December 8, 2006.

11. In general, the Act contemplates payment of compensation for a maximum period of five hundred (500) weeks. In this case, payments of compensation beyond that statutory period, as proposed by Defendant, would potentially deprive Plaintiff of the full weekly benefit at the Act's provisions for compensation for permanent loss of his leg. At the same time, the payment schedule proposed by Defendant would have the effect of extending the applicable limitations period within which Plaintiff would be able to file an Application for Adjustment of Claim for a change of condition pursuant to Ind. Code § 22-3-3-27. For these reasons, the best view of the Act is that Plaintiff's award of compensation for permanent impairment be paid over a period of five hundred (500) weeks beginning as of the date of injury.

12. Given due consideration for all provisions of the worker's compensation Act, the Board concludes that the impairment award of Two Hundred Fifty Thousand Dollars ($250,000.00) shall be payable for five hundred (500) weeks beginning as of the date of injury, December 8, 2006.

13. Defendant is entitled to a credit against the permanent partial impairment value for all compensation paid to Plaintiff after November 21, 2007.

Appellee's App. pp. 19-21. Cat Dog now appeals.

**Discussion and Decision**

Cat Dog challenges the nature and scope of the Board's award of benefits to Jerrell, and as such, confronts a stringent standard of review. When we review a decision of the full Worker's Compensation Board, we are bound by the factual determinations of

the Board and may only consider errors in the Board's conclusions. Obetkovski v. Inland Steel Indus., 911 N.E.2d 1257, 1260 (Ind. Ct. App. 2009), trans. denied. We apply a two-tiered standard of review. Ag One Co-op v. Scott, 914 N.E.2d 860, 862 (Ind. Ct. App. 2009). First, we review the record to determine whether there is competent evidence of probative value to support the Board's findings. Next, we determine whether the Board's findings support the decision. Id. at 863.

We will not disturb the Board's findings of fact unless the evidence is undisputed and leads inescapably to a contradictory result. Id. Therefore, on review of the Board's findings of fact, we must consider only the evidence and reasonable inferences drawn therefrom that support the Board's findings. Id. We do not reweigh the evidence or assess the credibility of the witnesses. Id. Importantly for this case, while we are not bound by the Board's legal conclusions, we will disturb the Board's conclusions only if it incorrectly interpreted the Worker's Compensation Act. Id.

### I. PPI Award Paid Over 500 Weeks

Cat Dog first argues that the Board's order paying Jerrell's PPI award over a period of 500 weeks was erroneous. Cat Dog asserts that Jerrell was entitled to the greater of "the amount payable for impairment or five hundred (500) weeks of compensation" and that, since Jerrell elected to receive PPI benefits instead of PTD benefits, he could not receive his benefits over a period of 500 weeks. Appellant's Br. at 5. Cat Dog claims that "the Act specifically imposes a 500-week payment period, but only for permanent disability awards, not for PPI awards like Jerrell's" and that "[t]he 500-week compensation cap set out in Ind. Code § 22-3-3-10(i)(11) expressly applies

6

only to PTD awards." Appellant's Br. at 7-8. Cat Dog argues that section 22-3-3-10(i)(11) requires that Jerrell's PPI benefits be paid weekly, at sixty-six and two-thirds percent of Jerrell's average weekly wage.[3]

The issue of whether the Board erred in the manner in which it made its award to Jerrell is one of law for this court to decide. In so doing, we look to the Worker's Compensation Act, its underlying purposes and the intent of our General Assembly. We will reverse the Board only if it incorrectly interpreted the Act. Id. Simply said, the Board's interpretation of the Act is entitled to great weight and when faced with two reasonable interpretations of a statute, one of which is supplied by an administrative agency charged with enforcing the statute, courts should defer to the agency. See Cincinnati Ins. Co. ex rel. Struyf v. Second Injury Fund, 863 N.E.2d 1242, 1249 (Ind. Ct. App. 2007).

In looking to the purpose of the statute, we note that the Worker's Compensation Act is intended to benefit the employee and should "be liberally construed in favor of the employee so as to not negate the Act's humane purposes." Frampton v. Central Indiana Gas Co. (1973), 260 Ind. 249, 251, 297 N.E.2d 425, 427. Here, such construction, and the appropriate level of deference given to the Board's interpretation of the Act, supports the Board's award to Jerrell. See Lowell Health Care Ctr. v. Jordan, 641 N.E.2d 675, 678 (Ind. Ct. App. 1994). The Board concluded that if it awarded Jerrell's benefits in the way that Cat Dog proposed, in weekly installments of $166.75, "payment of the impairment

---

[3] Indiana Code section 22-3-3-10(i)(11) provides, "[f]or injuries resulting in total permanent disability, the amount payable for impairment or five hundred (500) weeks of compensation, whichever is greater."

award would take approximately twenty-eight years." Appellee's App. p. 20. It further concluded that payment of compensation beyond a period of 500 weeks "would potentially deprive [Jerrell] of the full weekly benefit [of] the Act's provisions for compensation for permanent loss of his leg" and also "would have the effect of extending the applicable limitations period within which [Jerrell] would be able to file an Application for Adjustment of Claim for a change of condition pursuant to Ind. Code § 22-3-3-27." Appellee's App. p. 21.

The Board, in its discretion, ordered Cat Dog to pay Jerrell's PPI award over a period of 500 weeks. Nothing in the Act prohibits this. With the purpose of the statute in mind, we defer to the Board's interpretation of the Act that it is not limited to awarding PPI compensation at a weekly payment of an amount equal to sixty-six and two thirds percent of the employee's average weekly wages. Therefore, we conclude that the Board did not err in ordering Cat Dog to pay Jerrell's award over a period of 500 weeks.

## II. Credit for TTD Payments

Cat Dog next argues that, because the Board awarded Jerrell PPI benefits from December 8, 2006, the date of his injury, Cat Dog is entitled to a credit for all TTD benefit payments it made to Jerrell after his injury. Cat Dog asserts that "TTD benefits are not payable once the permanence of an employee's injury or disability is fixed and permanent impairment or disability benefits become payable" and that "the Board should have extended Cat Dog Trucking full credit against Jerrell's $250,000 PPI award for all of the TTD benefits it has paid Jerrell, rather than crediting only TTD payments made

8

after November 21, 2007." Appellant's Br. at 10-11. To support its claim, Cat Dog cites Indiana Code section 22-3-3-7, which states:

> If it is determined that as a result of this section temporary total disability benefits were overpaid, the overpayment shall be deducted from any benefits due the employee under section 10 of this chapter and, if there are no benefits due the employee or the benefits due the employee do not equal the amount of the overpayment, the employee shall be responsible for paying any overpayment which cannot be deducted from benefits due the employee.

Indiana Code section 22-3-3-7 further provides that an overpayment of TTD benefits should be credited to an employer where that overpayment occurred because the employee's right to receive TTD benefits terminated due to the employee returning to employment, dying, refusing to undergo medical examination, receiving 500 weeks of TTD benefits or maximum compensation allowed under the law, being unable to work for reasons unrelated to the compensable injury, or the employer giving written notice of its intent to terminate TTD benefits and the employee failing to give notice of disagreement.

Here, none of the circumstances set forth in section 22-3-3-7 is applicable, and we are not aware of any other provision in the Act that limits the TTD benefits an employee may receive by the date the PPI payments begin. The Board did not interpret this section as requiring a credit to the employer for TTD payments that overlap with PPI payments, and our standard of review requires us to defer to the Board's reasonable interpretation of the Act. See Stump Home Specialties Mfg. v. Miller, 843 N.E.2d 18, 22 (Ind. Ct. App. 2006) (holding that where Worker's Compensation claimant and employer did not reach an agreement with regard to the period for which PPI benefits would be paid, the

9

Worker's Compensation Board had authority to determine the period, since no statute or court opinion provided that the date of the injury was always the starting date for the payment of PPI benefits.); see also Lowell Health Care Ctr. v. Jordan, 641 N.E.2d 675, 678 (Ind. Ct. App. 1994) (holding that the Act must be liberally construed and that a worker's compensation claimant could recover 578 weeks of temporary total impairment benefits and total permanent disability benefits, even though one provision of the Act limited award of benefits "during the total disability" to 500 weeks, where another provision of the Act provided for recovery of total permanent disability benefits for 500 weeks, in addition to temporary total disability benefits of 78 weeks or less.). Therefore, we find no error here.

Cat Dog also cites several opinions from this court holding that TTD benefits are no longer available to a claimant once the claimant's injury becomes "permanent and quiescent." See Perkins v. Jayco, 905 N.E.2d 1085, 1089-90 (Ind. Ct. App. 2009); Kohlman v. Indiana Univ., 670 N.E.2d 42, 43-44 (Ind. Ct. App. 1996); Dennison v. Martin, Inc., 395 N.E.2d 826, 828 (Ind. Ct. App. 1979); Covarubias v. Decatur Casting, Div. of Hamilton Allied Corp., 358 N.E.2d 174, 176 (Ind. Ct. App. 1976). Because the Board credited Cat Dog with the TTD benefits it paid Jerrell after Jerrell's date of quiescence, November 21, 2007, we cannot see how the Board's award of benefits to Jerrell is inconsistent with these holdings.

After reviewing the statutes and case law cited by Cat Dog, we cannot say that Cat Dog has met its burden of proving that the Board erred in not allowing a credit to Cat

10

Dog for the TTD payments it made before November 21, 2007, the date it found Jerrell's condition to be permanent and quiescent.

### III. Home Health Care Provided by Zimmerman

Finally, Cat Dog argues that it should receive a credit for the home healthcare services it provided to Jerrell. It asserts that the Board awarded Jerrell fifty-six hours per week of home healthcare from May 7, 2009 to December 10, 2010, but erred when it failed to credit Cat Dog for the two hours per day of home healthcare Cat Dog claims to have provided to Jerrell during this period. Cat Dog cites, as evidence of the two hours per day of care it provided, an affidavit by an insurance adjuster. Cat Dog requests that this court remand to the Board with instructions to the Board to "revise its findings and conclusions to provide that Cat Dog Trucking is responsible to pay for not more than 42 hours of home healthcare per week from May 7, 2009 to December 10, 2010." Appellant's Br. at 13.

Here, Cat Dog is asking this court to reweigh the evidence, which we will not do. Zimmerman testified that, until December 2010, she provided all of Jerrell's home healthcare. The Board reviewed all the evidence presented, including the affidavit submitted into evidence by Cat Dog and Zimmerman's testimony, and concluded that Jerrell is entitled to an award for up to fifty-six hours per week of home healthcare beginning on May 7, 2009. Because there was evidence to support the Board's decision, we are without authority to reverse that decision. Graycor Indus. v. Metz, 806 N.E.2d 791, 798 (Ind. Ct. App. 2004). Therefore, we conclude that the Board did not err in its

award to Jerrell of fifty-six hours per week of home healthcare benefits from May 7, 2009 to December 10, 2010.

Jerrell, for his part, argues that the full Board's Finding of Fact No. 3, that Jerrell moved in with his mother on May 7, 2009, is erroneous. He asserts that the evidence proves that Jerrell moved into the rented home he shares with Zimmerman on August 24, 2008. He claims that he is thus "entitled to payment for [forty-eight] hours per week of home health care from 8/24/08 to 12/10/10, not just from 5/7/09 to 12/10/10, as ordered by the Board."[4] Appellee's Br. at 14.

In support of his claim that he moved into his mother's home on August 24, 2008, Jerrell cites his own testimony and testimony by Zimmerman, as well as a medical evaluation by his physician, Dr. Dietzen. Appellee's App. p. 61; Tr. pp. 91, 212, 268, 775, 798. As with Cat Dog's claims for credit, we cannot disturb the Board's factual determinations unless we conclude that the evidence is undisputed and leads inescapably to a contrary result. We therefore reject Jerrell's argument as a request to reweigh the evidence. Tr. pp. 30, 822, 994-95; Luz v. Hart Schaffner & Marx, 771 N.E.2d 1230, 1232 (Ind. Ct. App. 2002), reh'g denied, trans. denied. The record contains evidence supporting the full Board's Finding of Fact No. 3, and therefore, we will not disturb it.

**Conclusion**

For all of these reasons, and specifically under our deferential standard of review of the determinations of administrative agencies, we affirm the Board's award of

---

[4] Jerrell arrives at forty-eight hours per week by subtracting the eight hours of care per week paid for by Cat Dog from the fifty-six hours per week Zimmerman provided care for him.

Worker's Compensation benefits to Jerrell for the injury resulting from his accident on December 8, 2006.

Affirmed.

BRADFORD, J., and PYLE, J., concur.